# WILKES *v.* WILKES.

### EJECTMENT; DOWER.

1. Whether the heirs-at-law of a deceased mortgagor, who had remained in possession of the mortgage premises under an express covenant, or by apparent sufferance of the mortgagee, can maintain ejectment against a stranger having no claim under either the mortgage or the mortgagee, *quære*.

2. Where no dower has been assigned to the widow of a deceased grantor in a deed of trust, which conveyed the premises described therein to trustees to secure the payment of the deed of trust indebtedness, with the right in the grantor to remain in possession until default in the payment of the debt, and she occupies the premises as a home, her husband having left no other estate, his heirs-at-law cannot maintain an action of ejectment against her to recover possession of such premises; especially where the widow is also the administratrix of her deceased husband and, as such, the holder of the term of years created by the covenant in the deed of trust allowing him to remain in possession until default in payment of the deed of trust debt, the technical effect of which covenant, operating by way of redemise, was to create a legal estate for years in the grantor.

No. 1044. Submitted March 7, 1901. Decided April 2, 1901.

HEARING on an appeal by the defendant (specially al-

lowed) from an interlocutory judgment of the Supreme Court of the District of Columbia sustaining a demurrer by the plaintiffs to defendant's pleas to a declaration in an action of ejectment.     *Reversed.*

The COURT in its opinion stated the case as follows:

This case comes before us on a special appeal allowed from an interlocutory judgment in an action of ejectment.

The suit was begun by the appellees as heirs-at-law of Thomas M. Wilkes, deceased, against Kate S. Wilkes, to recover the possession of certain land in the city of Washington.

The declaration alleges that Thomas M. Wilkes was seized in fee of said lands and died intestate on December 11, 1898, whereupon the title thereto, with the right of immediate possession, devolved upon the plaintiffs, and that the defendant entered and ejected them, etc.

Defendant filed a number of pleas, from which it appears: That she was the wife of said Thomas M. Wilkes and resided with him upon the premises in controversy at the time of his decease, the same having long been the family home. That on May 6, 1897, she joined with said Thomas M. Wilkes in the execution of a deed of trust, " for the purpose of carrying into full effect the uses and trusts hereinafter declared and in consideration of $5 paid," and so forth, conveying the premises to McLeran and Flather to have and to hold, and so forth, *" unto and to the use of "* the said trustees, " as joint tenants, their heirs and assigns *in and for the uses and trusts following, and to and for no other use, intent or purpose."*

These are: 1. To secure the payment of a note of even date for $4,300 made by said Wilkes and payable to the order of William E. H. Merritt five years after date, with interest, at 5 per cent. per annum, payable semi-annually, together with any expenses, attorney's fees, etc., arising in respect of the trust. 2. *" Until any sale and conveyance as*

*hereinafter provided for, to permit* said Wilkes, his heirs and assigns, *to possess and enjoy said described premises and to receive the issues and profits thereof;"* and upon full payment, etc., to release said premises. 3. Upon default made in payment of said note or any installment of interest, and so forth, to sell the premises at public auction and convey the same to the purchaser at such sale, and so forth.

The said Thomas M. Wilkes thereafter had but a chancery trust in, and equity of, redemption of said premises. That defendant, having been in possession of the premises with her said husband, as their only property and home, at and before his decease, remained therein. That she has since been appointed administratrix of his estate. That, as widow, she had the possession of the premises, after his decease, under her right of quarantine and dower. And that, as administratrix, the chancery trust of°said Wilkes, under the deed of trust aforesaid, devolved upon and became vested in defendant as administratrix aforesaid.

Plaintiffs demurred to the several pleas, the substance of which has been stated, and were sustained. It is from this judgment that the appeal was prayed and allowed.

*Mr. Holmes Conrad* and *Mr. Conway Robinson* for the appellant.

*Mr. Frederic D. McKenney, Mr. J. S. Flannery* and *Mr Archibald Young* for the appellees:

1. The character of a conveyance and the quantity and extent of the estate conveyed thereby are to be determined and measured by the purposes for which the conveyance was made. *Doe* v. *Considine,* 6 Wall. 471; 2 Jarman on Wills, 156; 4 Kent's Commentaries, 233. This fundamental rule, which has been adopted in the construction of trusts created by will, is equally applicable to the construction of trusts created by agreement between the parties. A deed of trust is but a mortgage with a power of sale. If there is a power of sale, whether in the creditor or in some third person to whom

the conveyance is made for the purpose of securing the payment of a debt, it is still, in effect, a mortgage, though, in form, a deed of trust. Boone on Mortgages, Sec. 226, citing *McLane* v. *Paschal,* 47 Tex. 369; *Blackwell* v. *Barnett,* 52 Tex. 333; *Wright* v. *Bundy,* 11 Ind. 398; *Newman* v. *Samuels,* 17 Iowa, 528; *Turner* v. *Watkins,* 31 Ark. 429; *Woodruf* v. *Robb,* 19 Ohio, 212; *Shillaber* v. *Robinson,* 97 U. S. 68. In those States where a mortgage is a mere security for a debt, and not an absolute transfer of the estate, *it is generally held that a deed of trust is not a conveyance of the legal title to the trustee,* but is in legal effect a mere mortgage. Boone on Mortgages, Sec. 226, citing *Webb* v. *Hoselton,* 4 Neb. 308; *Newman* v. *Samuels, supra; Blackwell* v. *Barnett, supra;* 2 Pingree on Mortgages, Sec. 1315; *Teal* v. *Walker,* 111 U. S. 242. If the deed of trust in this case is nothing more, *in equity or at law,* than a mortgage — a security for the payment of money — and the land conveyed thereby, as stated in *Teal* v. *Walker, supra,* is simply a pledge for the payment of the debt, the well-established rules of law prevailing in jurisdictions where mortgages are so regarded should govern this case. Boone on Mortgages, Sec. 111.

2. The identical question involved in this case was carefully considered by the Court of Appeals of Maryland, in the case of the *Georges Creek Co.* v. *Detmold,* 1 Md. 225, which was an action of ejectment to recover a tract of land in Allegany county, Maryland. The defendants set up, in bar of the plaintiff's right to recover, the existence of a deed of trust on the land. The court held this to be no bar to the right of the mortgagor to maintain an action of ejectment for the possession of the land, where the deed of trust stipulated that he should retain and enjoy possession until default.

Such a stipulation appears in the deed of trust in this case.

The deed of trust in this case, as we have shown, is nothing more than a security for money loaned. Under it the trustees have merely the naked title to the property. They can exercise no control over the property until default. Their trust is purely a passive one. Much of the apparent

conflict in the decisions in regard to the character of the estate conveyed to trustees, under such deeds of trust, will disappear, if we bear in mind the distinction between a passive and an active trust, or between a conveyance of property to trustees for specific purposes and a mere mortgage to secure money loaned. See *Lincoln* v. *French,* 105 U. S. 614; *Leonard* v. *Diamond,* 31 Md. 536; *Bank of Commerce* v. *Lanahan,* 45 Md. 396. See, also, Boone on Mortgages, Sec. 226; 1 Jones on Mortgages, Sec. 62; *McPherson* v. *Cox,* 96 U. S. 404; *Anderson* v. *White,* 2 App. D. C. 408.

3. It is undoubtedly true, as stated by this court in the very recent case of *Beyer* v. *Le Fevre,* 17 App. D. C. 238, "that an action of ejectment can only, as a general proposition, be maintained on a legal title, for the recovery of the land by the heir-at-law." But the strictness of this rule is relaxed where the person withholding possession is a *stranger* or *trespasser.* 10 Am. & Eng. Encyc. of Law, tit. Ejectment, 533, and cases there cited. See, also, Id., 504, and cases cited in note 5; *Richardson* v. *B. & D. B. R. Co.,* 89 Md. 126; *Peltz* v. *Clark,* 5 Pet. 480.

4. The deed of trust involved in this case was executed May 6, 1897, nearly a year after the passage of the married woman's act now in force in this District (June, 1896). Before the passage of this act, the widow was not dowable of the equitable estates of which her husband died seized. This statute changed the existing law by expressly giving the widow dower in the equitable as well as the legal estates of her husband. Under the statute in force in this District (9 Henry III, Ch. 7, Sec. 1, Abert's Comp. 36), she was entitled to retain possession of said dwelling-house for the period of her quarantine — that is, for the forty days next following the date of the death of her husband — but not for a longer period. If her dower was not assigned during this period, or if she was not satisfied with the manner of its assignment, she was given a means of compelling the heir to assign it or reassign it, as the case might be (13 Edward I, Ch. 4, Abert's Comp. 37). But, in no event, could she lawfully retain possession beyond the period of

forty days mentioned. The defendant in this case, by withholding possession from the plaintiffs, the heirs-at-law of her deceased husband, placed herself in the same position that any trespasser or stranger would be in who might forcibly deprive them of the possession and enjoyment of their inheritance. The defendant being a trespasser, we submit that the plaintiffs can maintain their action of ejectment *against her.* By the terms of the deed of trust, the trustees have no right to take possession of the premises until default, and until default and a sale made by such trustees, the right of possession is expressly reserved to the grantor and his heirs.

It is submitted, in conclusion, that the plaintiffs below must maintain their action of ejectment in any event. In this District, the statute which abolished fictions in pleadings in actions of ejectment requires the action to be commenced *in the name of the real party in interest.* 16 Stats. 146; Sec. 809, R. S. D. C. In this case the *real parties in interest* are the plaintiffs, the *heirs of Thomas M. Wilkes,* the grantor in the deed of trust. The trustees have no interest in the property which would enable them to sue under this statute, and will have none until default be made.

Mr. Justice SHEPARD delivered the opinion of the Court:

Passing by, as immaterial to the disposition of this appeal, any mere technical questions relating to the character and form of the defensive pleas, the substantial question occurs: Whether the heirs-at-law of Thomas M. Wilkes, the deceased mortgagor, or grantor of the trust deed, have such apparent legal title and right of possession as entitle them to proceed at law by action of ejectment against his widow?

The first proposition on behalf of the appellant is, that the effect of the terms of the grant, to the trustees, their heirs and assigns, and "unto the use of them, their heirs and assigns," with the specification of a secondary use in respect of the security for the debt, was to vest an immediate legal title in them as bargainees. The argument is: The deed

expressly creating a use upon a use, the first use only was executed in the grantees by the Statute of Uses, thereby vesting in them a complete legal title subject only to defeasance by their actual reconveyance; the second use, and the grantor's equity of redemption, are mere chancery trusts, recognized, and enforceable upon occasion, only in equity.

Technically, this may be correct; but a better view would seem to be, that courts of law will now look to the substance rather than the form of such instruments as this — the real intent of the grant — and, as a consequence, regard the title of the trustees as determinable by the real purposes of the uses or trusts.

As a general rule, it is well settled that the nature and extent of a trustee's title depend, not so much upon the terms of its grant, as upon the purposes and requirements of the trust imposed. Where these are plain and certain, they will limit and restrain the language used in creating the title of the trustee. *Poor* v. *Considine,* 6 Wall. 458; *Young* v. *Bradley,* 101 U. S. 782, 787; *Potter* v. *Couch,* 141 U. S. 296, 309; *Frey* v. *Allen,* 9 App. D. C. 400, 403; 1 Perry on Trusts, Sec. 312.

It is not necessary, however, to the disposition of the case, that the precise question, as presented, should be determined; for, whether the deed of trust be regarded as having created a trust, so far active as to maintain the legal title of the trustees, or as a mere mortgage, it is sufficient for all the practical purposes of the appellant's contention.

Whatever may have been the progressive spirit manifested by courts of law in other jurisdictions in adopting the equitable view of the effect of such conveyances, the courts controlling in this jurisdiction have, in the absence of statutory change, adhered, in the main, to the strict rule of the common law.

Undoubtedly, as between mortgagor and mortgagee and their privies, in the District of Columbia, the effect of either the regular mortgage or the deed of trust as a substitute therefor, has always been considered to vest the legal title in the mortgagee or trustee, subject to defeasance only by the

satisfaction of the secured debt.  Upon this foundation rest
the decisions that the widow of a deceased mortgagor was
not entitled to dower in the mortgaged premises, and that
the mortgagor has no title or interest subject to the levy of
execution.  *Stelle* v. *Carroll,* 12 Pet. 201, 205; *Van Ness* v.
*Hyatt,* 13 Pet. 294, 298; *Bank* v. *Guttschlick,* 14 Pet. 19,
28; *Smith* v. *McCann,* 24 How. 398, 404; *Morsell* v. *First
National Bank,* 91 U. S. 357.

For the same reason, it has been held by the Supreme
Court of the United States, in cases arising elsewhere than
in Maryland or the District of Columbia, that the grantor
in a deed of trust, not intended to operate as a mortgage,
could not maintain ejectment without a reconveyance (*Lin-
coln* v. *French,* 105 U. S. 614) ; and that a mortgagor could
not recover possession in ejectment against the mortgagee or
his assigns.  *Brobst* v. *Brock,* 10 Wall. 519; *Bryan* v. *Bras-
ius,* 162 U. S. 415, 418.

And, in an analogous case in this court, it was said: " This
equitable title, therefore, was not such as would, ordinarily,
maintain an action of ejectment at law for the recovery of
the land by the heir-at-law against parties claiming as de-
visees under the alleged will of the deceased, the grantor in
the deed of trust." *Beyer* v. *Le Fevre,* 17 App. D. C. 238.

Whether a mortgagor, remaining in possession by the ex-
press terms of the instrument, or by the sufferance or implied
consent of the mortgagee, either before or after breach of
the condition, can maintain an action of ejectment against
one not claiming under the mortgagee; or, in other words,
whether such third person can set up the outstanding legal
title of the mortgagee, is a question, however, that has never
been expressly decided in this jurisdiction, so far as we have
been able to discover, and it may, therefore, be regarded
as an open one in this court.

In Maryland, it has been held, since the cession of the ter-
ritory of the District of Columbia, that where the mortgage
contained a covenant that the mortgagor should remain in
possession until default, the latter might recover in eject-

ment, because the covenant, operating by way of redemise, left him the substantial owner both in equity and at law. *Georges Creek Coal Co.* v. *Detmold,* 1 Md. 225, 234. See, also, *Jamieson* v. *Bruce,* 6 G. & J. 72, 74; *Chelton* v. *Green,* 65 Md. 272, 277; *Richardson* v. *B. & D. RR.,* 89 Md. 126, 129.

And in other jurisdictions, where the distinctions between law and equity, and the idea of a division of title under a mortgage into legal and equitable, prevailed, it has been held that a stranger to an unsatisfied mortgage could not set up the outstanding legal title of the mortgagee as against the right of the mortgagor in possession, even without an express covenant therefor, to recover in ejectment. *Den* v. *Dimon,* 10 N. J. L. 184; *Allen* v. *Kellam,* 69 Ala. 442, 447; *Melenthin* v. *Keith,* 17 Fed. Rep. 583.

If the case at bar presented only the question of the right of the heirs-at-law of a deceased mortgagor, who had remained in possession, either under an express covenant, or by apparent sufferance of the mortgagee, to recover in an action of ejectment against a stranger having no claim under either the mortgage, or the mortgagee, its determination would be embarrassed by the settled distinction between the jurisdictions of courts of law and of equity in the District of Columbia, and by the nonprogressive attitude, so to speak, of the courts of law in respect of the substantial relations between mortgagor and mortgagee created by a formal mortgage.

In such event, it would seem reasonable and just that the rigor of the ancient rule of the common law should be relaxed; and the writer, at least, would be strongly inclined to hold that the title conferred upon the mortgagee, or the independent trustee, to secure a debt, is to be regarded as limited by and to the plain purposes of the grant, and that so limited there would remain in the mortgagor, as against all persons not entitled to claim under the mortgage, a sufficient title to enable him to maintain an action of ejectment.

But, whatever might be the right of the heirs-at-law of a deceased mortgagor to maintain ejectment against a stranger

to the mortgage conveyance, we are agreed in the opinion
that, in the case at bar, they have no such right of possession
as against the widow of the deceased mortgagor.

In the first place, she is entitled to dower in the equitable
estate of her husband, he having died since the passage of the
recent statute changing the former rule of law in that re-
spect. Act June 1, 1896 (29 Stat. 194). It appears from
one of the pleas that the defendant and her husband occupied
the premises as a home at the time of his decease; that he
left no other estate; that during her period of quarantine
no dower was assigned to her; and that she remains in pos-
session by virtue of her dower right therein.

It seems that by the common law (now generally changed
in those States where dower exists at all), the widow was re-
garded as having no vested estate in any particular lands
of her deceased husband, and the heir-at-law might even put
her out of possession and force her to her writ of dower, or
to a bill for its assignment.

The reasons for that rule, founded in the nature of then
existing tenures, and specially applying where there might
be distinct parcels of land in more than one possession, and
also more than one messuage, would appear to fail when
applied to present conditions of land ownership in connection
with the particular facts of the case at bar. Here there is
no other property than the home of which the widow retains
an actual possession that was lawful in its origin.

Being in such possession of the only piece of property in
which her dower could be assigned, her right thereto ought
to confer upon her such continuing right of possession as to
bar ejectment by the heirs-at-law, whose duty it was to make
the proper assignment. So to hold avoids circuity of action
by compelling the heirs-at-law to proceed to assign dower;
for, otherwise, she would be cruelly ejected from her only
shelter and driven to her action at law or suit in equity for
immediate reinstatement in that from which she had been
expelled. This seems to be in complete accord with the pro-
visions of the act (9 Henry III, Ch. 7, Sec. 1), reaffirm-
ing the provisions of Magna Charta, and still in force in

this District, which reads: "And she shall tarry in the chief house of her husband by forty days after the death of her husband, within which days her dower shall be assigned her (if it were not assigned her before), or that the house be a castle; and if she depart from the castle, then a competent house shall be forthwith provided for her, in the which she may honestly dwell, until her dower be to her assigned, as it is aforesaid; and she shall have in the meantime her reasonable estovers of the common." Comp. Stat. D. C. 36, Sec. 164.

In the next place, the facts show that the defendant is also the administratrix of the estate of her husband, who died intestate.

His trust deed created an active trust that would, at law, have entitled the trustees to immediate possession had not the instrument contained an express covenant for his remaining in undisputed possession until default in payment.

This covenant operated by way of redemise, as we have heretofore seen, and its technical effect was to create a legal estate for years in the grantor or mortgagor. No default having occurred, and no action having been taken by the trustees on behalf of their *cestui que trust* to alter the possession, this term devolved as a chattel interest upon the defendant as administratrix.

Upon both grounds, therefore, we are of the opinion that the pleas were good and ought to have been sustained.

It follows that the judgment appealed from must be reversed, with costs, and the cause will be remanded with direction to enter an order overruling the demurrer to the defendant's pleas as amended. It is so ordered.

*Reversed.*