**ASSOCIATION OF WESTERN RAIL-
WAYS et al., Appellants,**

v.

**RISS & COMPANY, Inc., Appellee.**

**No. 17489.**

United States Court of Appeals
District of Columbia Circuit.

Argued May 2, 1963.

Decided July 3, 1963.

Mr. Richard J. Flynn, Chicago, Ill.,
with whom Mr. Stuart S. Ball, Chicago,
Ill., was on the brief, for appellant As-
sociation of Western Rys.

Messrs. James H. McGlothlin and Paul
F. McArdle, Washington, D. C., were on
the brief for appellants Carl Byoir & As-
sociates, Inc., and certain other appel-
lants.

Mr. Lester M. Bridgeman, Washing-
ton, D. C., with whom Mr. A. Alvis Layne,
Washington, D. C., was on the brief, for
appellee.

Before EDGERTON, Senior Circuit Judge,
and WILBUR K. MILLER and BASTIAN, Cir-
cuit Judges.

WILBUR K. MILLER, Circuit Judge.

In this anti-trust suit brought by Riss
& Company against numerous defend-
ants, tried during a ten-month period, the
District Court entered judgment against
five defendants. On their appeal, we re-
versed and remanded for the entry of a
judgment in their favor.[1] The District
Court followed our direction, but refused
to allow costs to the prevailing parties.
Their appeal from this refusal presents
two questions: (1) May a trial judge in
this jurisdiction exercise his discretion
as to whether to allow costs to the par-
ties who prevail? (2) If so, was the dis-
cretion abused in this instance?

Before 1938, the general rule in federal
courts was that in actions at law costs
went to the prevailing party as a matter
of course, but in suits in equity the trial
judge had discretion as to their allow-
ance, unless a statute directed otherwise.
Kansas City So. Ry. v. Guardian Trust
Co., 281 U.S. 1, 9, 50 S.Ct. 194, 74 L.Ed.
659 (1930). The Federal Rules of Civil
Procedure adopted in 1938 provided for
only one form of civil action and applied
to it the rule which had formerly obtained
in equity, with the two exceptions noted.
This general grant of discretion to fed-
eral trial judges in the allowance of costs
was provided in Civil Rule 54(d), which
in pertinent part reads as follows:

"Except when express provision
therefor is made either in a statute

1. Association of Western Railways v. Riss
& Co., 112 U.S.App.D.C. 49, 299 F.2d
133, cert. denied 370 U.S. 916, 82 S.Ct.
1555, 8 L.Ed.2d 498 (1962).

of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs * * *."

The appellants contend, however, that § 1517 of Title 11, D.C.Code (1961), which they say is "a statute of the United States" within the meaning of Rule 54 (d), expressly provides for the recovery of costs by the defendant when the verdict is in his favor, and thus takes away from trial judges in this jurisdiction the discretion as to the allowance of costs which otherwise they would have under Rule 54(d). Section 1517 is as follows:

"If any person or persons shall commence or sue in any court of record, or in any other court, any action whatsoever, wherein the plaintiff or defendant might have costs (if in case judgment should be given for him) and the plaintiff or plaintiffs, demandant or demandants, in any such action, bill, or plaint, after appearance of the defendant or defendants, be nonsuited, or that any verdict happen to pass by any lawful trial against the plaintiff· or plaintiffs, demandant or demandants, in any such action, bill, or plaint, then the defendant and defendants, in every such action, bill, or plaint, shall have judgment to recover his costs against every such plaintiff and plaintiffs, demandant and demandants, and that to be assessed and taxed by the discretion of the judge or judges of the court where any such action, bill, or plaint shall be commenced, sued, or taken; and also that every defendant in such action, bill, or plaint shall have such process and execution for the recovery and having of his costs against the plaintiff or plaintiffs, as the same plaintiff or plaintiffs should or might have had against the defendant or defendants, in case that judgment had been given for the part of the said plaintiff or plaintiffs, in any such action, bill, or plaint."

This stilted, archaic language does indeed seem to take away from our trial judges the discretion as to the allowance of costs granted to federal judges generally by Civil Rule 54(d). It is therefore effective as one of the built-in exceptions to Rule 54(d) if it is "a statute of the United States" within the meaning of that Rule. The mere fact that it purports to be a section of the Code applicable only in the District of Columbia does not prevent § 1517 from being "a statute of the United States," for Civil Rule 81(e) provides that the term "a statute of the United States" includes, so far as concerns proceedings in the United States District Court for the District of Columbia, any Act of Congress locally applicable to and in force in the District of Columbia. It follows that, if § 1517 of the District Code is actually a Congressional enactment in force in the District of Columbia, it is "a statute of the United States" which, contrary to the generality of Rule 54(d), does not give a trial judge discretion, but requires the allowance of costs to the prevailing party.

Section 11–1517, as such, was not expressly enacted by Congress. The Act of 1901 which adopted the District of Columbia Code did not itself contain it. The Act of 1901 did include, however, the following which is now § 49–301 of the Code:

"The common law, all British statutes in force in Maryland on February 27, 1801, the principles of equity and admiralty, all general Acts of Congress not locally inapplicable in the District of Columbia, and all Acts of Congress by their terms applicable to the District of Columbia and to other places under the jurisdiction of the United States. in force in the District of Columbia on March 3, 1901, shall remain in force except in so far as the same are inconsistent with, or are replaced by, subsequent legislation of Congress."

Presumably pursuant to this provision, the codifiers inserted in the Code § 1517 of Title 11, which, as their annotations indicate, is culled from and based upon British statutes which they decided were

in force in Maryland on February 27, 1801, viz., 23 Hen. 8, ch. 15, § 1 (1531); 4 Jac. 1, ch. 3, § 2 (1606). Because of its physical presence in today's Code, § 1517 has the superficial appearance of "a statute of the United States" applicable to and in force in the District of Columbia which is an exception to the provision of Rule 54(d) that federal trial judges have discretion as to the allowance of costs to the prevailing party.

The correctness of the codifiers' inclusion of § 1517 in the Code depends on whether the pre-Revolutionary British statutes upon which they based it were in force in Maryland February 27, 1801, *as actual statutory enactments*. If they were, they were made parts of the statutory law of the District of Columbia by § 49–301 of our Code. If they were not then so in force in Maryland, § 1517 is not a statute of the United States applicable here.

As the two British statutes upon which the codifiers relied as the basis of § 1517 existed at the time of the first emigration to Maryland, appellants contend they were adopted in 1776 by the Maryland Constitutional Convention when it wrote the following Article into its original Declaration of Rights:[2]

> "3. That the inhabitants of Maryland are entitled to the common law of England, and the trial by jury according to the course of the law, and to the benefit of such of the English statutes as existed at the time of their first emigration, and which by experience have been found applicable to their local and other circumstances, and of such others as have been since made in England or Great Britain, and have been introduced, used, and practised by the courts of law or equity * * *."

and that therefore the British statutes were in force in Maryland on February 27, 1801, as statutory enactments, and so were adopted by Congress for the District in 1901, not as common law, but as statutory provisions of Maryland. They say in their reply brief:

> " * * * The Declaration of Rights was itself, however, *a legislative act,* and, by incorporating these British statutes by reference, gave them the status of statutory law in Maryland. * * * " (Emphasis in original.)

Contrary to appellants' assertion, the Declaration of Rights of 1776 was not a legislative act; it was a provision proposed by a convention, which later became a part of a constitution. It did not purport to make the British statutes to which it referred parts of the State's organic law, but in general terms left for legislative action the designation of the British statutes which had been found "applicable to their local and other circumstances" and were to be adopted as Maryland statutes. Also contrary to appellants' contention, the Declaration of Rights did not incorporate "these British statutes by reference," and so give "them the status of statutory law in Maryland." It did not identify them, or make it possible for anyone else to identify them.

This section of the Declaration of Rights cannot be said to be self-executing; it is too vague for that. It was only a precatory provision strongly suggesting that the legislature should enact those pre-emigration statutes which met the standards it described. But it did not enumerate any such statutes and nobody ever determined which met those standards until Chancellor William Kilty undertook to do so in 1810. In other words, Article 3, although a constitutional provision, had no binding effect without subsequent implementing legislation.

The significant fact for our present purposes is that on February 27, 1801,— the crucial date—the Maryland legislature had not gotten around to determining which of the old English statutes existing at the first emigration had "been found applicable to their local and other circumstances" and so ought to be adopted as statutes of Maryland. It would

2. See D.C.Code (1961), vol. 1, p. xx.

seem, therefore, that no pre-emigration British statute was in force as a statute in Maryland on February 27, 1801, merely because of Article 3 of the 1776 Declaration of Rights. Manoukian v. Tomasian, 99 U.S.App.D.C. 57, 237 F.2d 211 (1956), to which further reference will be made later in this opinion.

Indeed, the legislature did not effectively act in this regard until 1809. A resolution was then adopted asking Chancellor Kilty and the Judges of the Court of Appeals to determine which British statutes had been found so applicable and which parts thereof were proper to be introduced and incorporated into the statute law of the State, and to report their findings to the legislature.

Pursuant to this resolution, Chancellor Kilty on November 12, 1810, made

"A Report of All Such English Statutes as Existed at the Time of the First Emigration of the People of Maryland, and Which by Experience have been found Applicable to their Local and Other Circumstances; and of such others as have since been made in England or Great-Britain, and have been introduced, used and practised, by the Courts of Law or Equity; and also all such parts of the same as may be proper to be introduced and incorporated into the body of the Statute Law of the State." [3]

Kilty divided the report into three parts: first, "English Statutes existing at the time of the first emigration of the people of this State, which have not been found, by experience, applicable to their circumstances;" second, "Statutes and Parts of Statutes, which have been Found Applicable, but are not proper to be Introduced and Incorporated into the Body of the Statute Law of This State;" and third, "Statutes and Parts of Statutes which have been Found Applicable, and are proper to be Introduced and Incorporated into the Body of the Statute Law of This State."

Kilty included 23 Henry 8, ch. 15 (1531) and 4 James [Jac.] 1, ch. 3 (1606) in this third category. He described the former as "An act, that the plaintiff, being nonsuited, shall yield damages to the defendants in actions personal, by the discretion of the justices" and said with respect to it: [4]

"It is under this statute that defendants prevailing in suits recover their costs. See 3 Bl.Com. 399; and 1 Bac.Abt. title Costs, D. There are several acts of the assembly respecting costs, but none that interfere with this statute, which is therefore considered proper to be introduced, [and incorporated into the Body of the Statute Law of This State]."

He described chapter 3 of 4 James 1 as "An act to give costs to the defendant upon a nonsuit of the plaintiff, or verdict against him" and with respect to it said: [5]

"See note on 23 Hen. 8, Ch. 15. This statute applies to 'any action, bill, or plaint of trespass, ejectment or other action, wherein the plaintiff or demandant might have costs.' There were further provisions by 8 and 9 W. 3, Ch. 11; and 4 and 5 Anne Ch. 16, both of which, with this statute are considered proper to be incorporated, &c. See 3 Bl.Com. 399."

It might be argued that when Kilty said certain old British statutes were "proper to be introduced and incorporated into the Body of the Statute Law of This State," he was saying they became parts of it in 1776 when the Declaration of Rights was adopted. But we think his recognition of them as proper for introduction and incorporation did not mean that they had already been introduced and incorporated, and did not have the effect of transforming the old British statutes into Maryland statutes as of the year 1776. It seems to us that Kilty's words had only prospective effect as a recommendation that the pre-emigra-

---

3. Kilty's Rept., title page (1811).

4. Kilty's Rept. p. 231.

5. Id. at p. 236.

tion English statutes which he determined had been found by experience applicable to Maryland's local and other circumstances should, by affirmative legislative action, be introduced and incorporated in the body of the statute law.

The legislature ordered Kilty's Report to be printed but, curiously enough, it never expressly approved or adopted it and, as far as we have been able to discover, never enacted into statutory law those portions of the British statutes which Kilty said were "proper to be introduced and incorporated." It may be said this legislative silence gave consent; but we think the fair import of his statement that certain English statutes were "proper to be introduced and incorporated" is that, in his view, they had not been so introduced and incorporated when he wrote in 1810.

Chancellor Kilty's monumental work has been much admired and the Maryland Court of Appeals has said it is "a safe guide in exploring an otherwise very dubious path." [6] But that does not mean that the statutes he classified in 1810 as "proper to be introduced and incorporated" were, because of his classification, to be considered as having been made part of either the organic or the statute law by the Declaration of Rights of 1776.

Julian J. Alexander, in the preface to his work, "A Collection of the British Statutes in force in Maryland," confirms our view. He says: [7]

" * * * [T]he Report of Chancellor Kilty ought to have been considered by the Legislature only as a means to an end; as showing only, and correctly enough, what ought to be adopted as the law of the State * * *."

We conclude that the pre-emigration British statutes cited by the codifiers were not part of the statute law of Maryland on February 27, 1801, and so were not made part of the statute law of the District of Columbia by the Congressional Act of 1901 which included § 49–301 of our Code. Hence, § 1517, adapted from them by the editors of the Code, is not "a statute of the United States" and does not prevent the applicability of Civil Rule 54(d) in this jurisdiction. It follows, of course, that our District Court judges have discretion as to whether to allow costs to the prevailing party.

In several early decisions which seem to be contrary to our conclusion, this court apparently assumed that certain pre-emigration British statutes became *statutes* of the District upon its formation, without examining into the question whether they were actually statutes of Maryland on February 27, 1801, or merely had the effect of common law. For example, see Ex Parte Harlow, 3 App.D.C. 203 (1894); Wirt v. Stubblefield, 17 App. D.C. 283 (1900); Wilkes v. Wilkes, 18 App.D.C. 90 (1901); Gwin v. Brown, 21 App.D.C. 295 (1903). None of these early opinions indicates that the court considered the status of the old English statutes as reflected in Kilty's Report which we think shows, as we have said, that they were not statutes of Maryland in 1801.

Probably the writers of these and similar cases relied to some extent upon Chief Justice Marshall's statement that "The statute of Elizabeth is in force in this [D]istrict [of Columbia]." [8] He gave no reason for making the statement and did not define or qualify the words "in force." In deciding the Cathcart case, it was unnecessary for the great Chief Justice to say whether he regarded the Elizabethan statute as "in force" in the District as a statute or as a judicial precedent. We may safely assume he meant the latter, as a statement that it was in force as a statute would have been, in the light of Kilty's Report, an unwarranted assumption.

In Manoukian v. Tomasian,[9] however, we gave careful consideration to the

6. Dashiell v. Attorney-General, 5 Har. & J. 392, 403, 9 Am.Dec. 572, 577 (1822).

7. Alex.Brit.Stat. p. viii (1870).

8. Cathcart v. Robinson, 5 Pet. 264, 30 U.S. 264, 279, 8 L.Ed. 120 (1831).

9. 99 U.S.App.D.C. 57, 237 F.2d 211 (1956).

status of pre-Revolutionary British statutes. We quoted from the Maryland Declaration of Rights as above, but concluded that "after the Declaration of Independence British statutes were no longer the commands of an effective sovereign power in Maryland." (99 U.S.App.D.C. at 60, 237 F.2d at 214.) We noted that "British statutes antedating the Declaration of Independence have almost universally been regarded as having the effect of judicial precedent, rather than legislative enactment," and agreed with the great weight of authority that such British statutes are "to be applied by American courts like the common law, rather than like enactments of our own legislatures." (Id. 99 U.S.App.D.C. at 61, 237 F.2d at 215.)

█ There remains for consideration the appellants' contention that the trial judge abused his discretion in refusing to allow them to recover their costs. As Chief Justice Taft said:[10] "There is no doubt that, as a general rule, an appeal does not lie from a decree solely for costs * * *." This may be equally true as to a decree which declines to award costs. But when, as here, the power of the court is in dispute, an appeal may be entertained.

It does not seem to us that discretion was abused here. Although the judge complimented the parties and their counsel on their behavior, he may well have thought them equally responsible for a long and arduous trial and that consequently each side should bear its own costs.

Affirmed.

EDGERTON, Senior Circuit Judge, (concurring in the result).

As the court's opinion shows, the ancient British statute now called § 11–1517 of the District of Columbia Code was never consciously or directly enacted by the Congress of the United States and appellants' sophisticated argument that Congress enacted it unconsciously and in-

directly is not convincing. Even if it were convincing, I think it would not require us to conclude that the ancient British statute is "a statute of the United States" or an "Act of Congress" within the meaning of Rules 54(d) and 81(e) of the Federal Rules of Civil Procedure. I therefore agree that the exception in Rule 54(d) does not cover this case and the judgment of the District Court should be affirmed.

10. Newton v. Consolidated Gas Co., 265 U.S. 78, 82, 44 S.Ct. 481, 482, 68 L.Ed. 909 (1924).